

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| MELISSA WHITE, individually, and as heir and special administratrix of the Estate of JOHN WHITE, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>CLARK COUNTY, *et al.*,<br><br>Defendants. | Case No. CV-S-00-0749-KJD (RJJ)<br><br>**ORDER** |

Presently before the Court is Defendants State of Nevada ex rel Nevada Department of Motor Vehicles and Public Safety, State of Nevada ex rel Nevada Division of Parole and Probation, Don Denison and Beverley Cunningham's ("State Defendants") Renewed Motion for Summary Judgment (#125). Plaintiffs filed a response in opposition (#128), to which State Defendants replied (#129).

## I. Background.

In 1994, John White ("White") was convicted of forgery and sentenced to eight years in prison. On February 1, 1997, White was released from prison after being granted parole. While on parole, John White was required to remain drug free and to report to his parole officer, Beverly Cunningham, at least once a month. During the first year of parole, White reported regularly.

However, he twice tested positive for illegal drug consumption during this time. At no time during this first year did Parole and Probation seek revocation of his parole.

On February 24, 1998, White suffered a closed head injury when he fell off a roof while working on an air conditioner. Although a CT Scan revealed no abnormalities, White was hospitalized until March 2, 1998. White also began treatment with Dr. Kirby Reed on March 17, 1998 for complications resulting from his head injury. Dr. Reed ordered an MRI and an EEG. The MRI Scan indicated that there was a small area of residual brain injury which at the time did not appear to be producing any clinical symptoms. The EEG was normal. Based on these findings, Dr. Reed did not recommend any prophylactic anticonvulsant medication.

On April 23, 1998, White tried to report to his parole officer, Beverley Cunningham but did so after business hours. On this day, White ran into Cunningham in the parking lot where he attempted to hand her a package, which allegedly contained papers from his doctor. Cunningham advised him that it was after 5 p.m., and that the office was closed. She then told him to report back the following day during working hours. Not only did White fail to return the next day, he failed to report for several weeks. Because she had not heard from White since the encounter in the parking lot, on May 22, 1998, Cunningham submitted a violation report for his arrest.

On May 5, 1998, White began treatment with Dr. George Petroff. At this initial meeting White reported staggering, blurred vision, loss of hearing in his left ear, poor memory, and generalized pounding headache. Based on the result of his neurological findings, on a review of White's patient history and on the reports he had, Dr. Petroff began treating White for his headache and other facial pain. At this time, Dr. Petroff prescribed Baclofen (a muscle relaxant) and Ultram (a non-narcotic base pain medication), neither one of which is an anti-convulsant or anti-seizure medication. On May 26, 1998, Dr. Petroff saw White again. Five days earlier, White had gone to the emergency room because he could not talk or move his right arm. This lasted for a period of time but then completely resolved itself. Dr. Petroff, accordingly, did a full neurological examination. Based on the events five days earlier and on the full neurological examination, Dr. Petroff

entertained the possibility of a neurological migraine or a warning stroke or a transient ischemic attack. As a result of this visit, Dr. Petroff prescribed Calan which is used by neurologists to prevent migraines. Calan is not an anti-convulsant or anti-seizure medication. Dr. Petroff then scheduled medical tests to determine the cause of White's symptoms.

On May 28, 1998, White finally reported to Parole and Probation. Upon his arrival, Cunningham placed White under arrest for violating the terms of his parole. Later that day, White was transported to Clark County Detention Center ("CCDC"). On this same date, however, White was scheduled to have an EEG. White remained incarcerated at CCDC until June 2, 1998, when he was transported by ambulance to the hospital as a result of a seizure he suffered in his jail cell. On June 4, 1998, White was pronounced brain dead and thereafter died.

During the month of May, Mr. Terry, White's criminal defense attorney, tried to contact Cunningham regarding medical problems and any possible parole violations. Terry initially called Cunningham and left her a message. She did not return the call. On May 18, 1992, Terry wrote Cunningham a letter describing how White had attempted to report and was unable to do so due to his medical condition. After hearing about his arrest, Terry wrote a second letter on May 28, 1998. In this letter, Terry advised Cunningham about the need for White to receive his medication because he was "medically in an extremely precarious status." Later in the letter, Terry related White's most recent trip to the emergency room.

Plaintiffs filed a complaint alleging several constitutional and state law causes of action. In their second cause of action, Plaintiffs allege that Cunningham violated White's Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment when she rejected information regarding White's medical status. Plaintiffs further allege that Cunningham deliberately resisted, denied and ignored efforts by White, his wife Melissa White, and his attorney to ensure that White's medical condition was known and taken into account when considering his custody status. In the sixth cause of action, Plaintiffs allege that Denison acted with deliberate indifference or reckless disregard of White's medical needs by failing to provide proper training, supervision and

3

1  control of Cunningham with regard to parolees in a fragile state of health. In the seventh cause of
2  action, Plaintiffs allege that Denison acted with deliberate indifference or reckless disregard by
3  failing to formulate and adopt policies and procedures such that the medical status and special needs
4  of parolees are assessed and evaluated when making custody decisions.

## II. Analysis.

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e). All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(c), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See id. at 248.

4

### A. Defendants Nevada Division of Parole and Probation, Nevada Department of Motor Vehicles and Public Safety, Beverley Cunningham (Official Capacity) and Don Denison (Official Capacity).[1]

The Court finds that Plaintiffs' § 1983 claims against Defendants Nevada Division of Parole and Probation and Nevada Department of Motor Vehicles and Public Safety as well as Beverley Cunningham and Don Denison in their official capacities must fail. First, none of these Defendants is a "person" as that term is used in § 1983. Section 1983 read in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The Supreme Court has held that neither states nor their agencies are "persons" as that term is used in this statute. See Will v. Mich. Dept. of State Police, 491 U.S. 58, 65-66 (1989). Furthermore, because an official-capacity suit against a state official is a suit against his or her office, it is also a suit against the state and thus not suit against a "person." See id. at 71. Accordingly, these Defendants are not "persons" for § 1983 purposes and thus Plaintiffs' claims fail.

Second, the Eleventh Amendment bars suit against these Defendants. The Eleventh Amendment provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Eleventh Amendment restricts the federal courts' Article III jurisdiction by barring suits against unconsenting states. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996). Although the Eleventh Amendment does not explicitly prohibit an action against a state by a citizen of a state, the Supreme Court has construed

---

[1] In their complaint, Plaintiffs bring § 1983 claims against Don Denison. In these claims, Plaintiffs allege that Denison failed to train, supervise and control as well as to formulate policy for parolees in White's medical situation. The Court views these claims as against Denison in his official capacity. Moreover, Plaintiffs fail to allege any facts that Denison was personally involved in White's case precluding the Plaintiffs from pursuing a §1983 individual-capacity claim against Denison. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (stating that a § 1983 individual-capacity suit seeks to hold a state official liable "for actions he takes under color of state law.").

5

the amendment as barring such suits. See Premo v. Martin, 119 F.3d 764, 768 (1997) (citing Hans v. Louisiana, 134 U.S. 1, 10 (1890)). The Eleventh Amendment also bars suit against state officials when the state is the real party in interest. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102 (1984); see also Kentucky v. Graham, 473 U.S. 159, 169 (1985) (the Eleventh Amendment "bar remains in effect when state officials are sued for damages in their official capacity.") There are two well recognized exceptions to Eleventh Amendment immunity: Congress can abrogate a state's Eleventh Amendment sovereign immunity without the consent of the state in certain instances, or a state can waive immunity by consenting to suit in federal court. See Premo, 119 F.3d at 768 (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985)). Eleventh Amendment sovereign immunity cannot be impliedly waived; rather, the state must clearly declare its waiver. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675-76, 682 (1999).

Here, neither exception applies. Congress did not abrogate the states' Eleventh Amendment sovereign immunity when it passed 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 340-45 (1979). Additionally, the State of Nevada has explicitly refused to waive its immunity from suit under the Eleventh Amendment. See Nev. Rev. Stat. 41.031(3) ("The State of Nevada does not waive its immunity from suit conferred by Amendment XI of the Constitution of the United States.") Because the Eleventh Amendment bars damage suits against the state, its agencies, and state officials in their official capacity, Plaintiffs' claims against Nevada Division of Parole and Probation, and Nevada Department of Motor Vehicles and Public Safety, as well as Beverley Cunningham and Don Denison in their official-capacities are barred.[2]

---

[2] In their opposition, Plaintiffs cite Hafer v. Melo, 502 U.S. 21 (1991) for the proposition that state officials may be sued in their official capacities under § 1983. Plaintiffs misread Hafer. Hafer holds that state officials sued in their individual capacities are "persons" within the meaning of § 1983 and that the Eleventh Amendment does not bar such suits. See id. at 31. Hafer reaffirms the holding that state officials sued for damages in their official capacity are not "persons" for § 1983 purposes. See id. at 27.

6

### B. Beverley Cunningham in her individual capacity.

The Court finds that Plaintiffs' § 1983 claims against Defendant Cunningham in her individual capacity also fail as she is entitled to absolute quasi-judicial immunity. Absolute immunity has been accorded to legislators, judges, prosecutors and those who perform judge-like or prosecutor-like functions. See Sellers v. Procunier, 641 F.2d 1295, 1299 n.7 (9th Cir. 1981); Reed v. Iranon, 940 F. Supp. 1523, 1527 (D. Haw. 1996). The Ninth Circuit has held that parole officers are entitled to absolute quasi-judicial immunity when they act, deny, or revoke parole. See Sellers, 641 F.2d at 1303; Reed, 940 F. Supp. at 1528. Moreover, the Ninth Circuit has further held that quasi-judicial immunity is applicable to a parole official's actions in executing parole revocation procedures. See Anderson v. Boyd, 714 F.2d 906, 909 (9th Cir. 1983); Reed, 940 F. Supp. at 1528. In Anderson, the court found that a parolee's allegation that parole officers, without reasonable justification, had him arrested and placed on parole holds pending investigation of purported parole violations could not overcome the bar of quasi-judicial immunity because these actions directly related to the decision to revoke parole. See Anderson, 714 F.2d at 909.

In their complaint, Plaintiffs' allegations against Cunningham refer to nothing more than her conduct as she initiated the parole revocation process by arresting White and placing him in the custody of CCDC. These actions are part and parcel of any effort to revoke parole. See Reed, 940 F. Supp. at 1528. Here, Cunningham's decision to initiate the parole revocation process by arresting and placing a parolee in the custody of CCDC is entitled to absolute immunity. To the extent that Plaintiffs allege that Cunningham's conduct was based upon false allegations and intentionally false and incomplete reports, such allegations do not take Cunningham's actions outside the protection of absolute immunity. See Stump v. Sparkman, 435 U.S. 349, 356 (1978); Demoran v. Witt, 781 F.2d 155, 158 (9th Cir. 1985) (stating that even claims of bad faith or malice are insufficient to overcome absolute immunity). Moreover, Cunningham did not act in complete absence of jurisdiction when arresting White. See, e.g., Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (stating that judicial immunity is not available if actions, although judicial in nature, were taken in complete absence of all

7

jurisdiction) Here, Cunningham, as a parole officer, lawfully arrested White, without a warrant, when there was probable cause to believe that White acted in violation of parole. See Nev. Rev. Stat. 213.151. Plaintiffs have never argued that Cunningham lacked probable cause to arrest White for his parole violations. Cunningham is entitled to absolute quasi-judicial immunity to Plaintiffs' § 1983 claims.[3]

### III. Conclusion.

Plaintiffs' § 1983 claims against Defendants Nevada Division of Parole and Probation, Nevada Department of Motor Vehicles and Public Safety, Beverley Cunningham in her official capacity and Don Denison in his official capacity are barred. None of these Defendants is a "person" subject to § 1983 liability. Moreover, the Eleventh Amendment bars Plaintiffs' claims against these Defendants. Finally, Plaintiffs' § 1983 individual capacity claim is also barred. Defendant Cunningham is entitled to absolute quasi-judicial immunity for initiating the parole revocation against White and arresting him pursuant to initiating these proceedings.

Accordingly, IT IS HEREBY ORDERED that Defendants State of Nevada ex rel Nevada Department of Motor Vehicles and Public Safety, State of Nevada ex rel Nevada Division of Parole and Probation, Don Denison and Beverley Cunningham's ("State Defendants") Renewed Motion for Summary Judgment (#125) is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiffs' § 1983 claims against these Defendants are **DISMISSED**.

DATED this 30th day of September 2004.

Kent J. Dawson
United States District Judge

---

[3] Assuming that Plaintiffs did bring § 1983 individual-capacity claims against Don Denison, he would be entitled to the same absolute quasi-judicial immunity as Cunningham.

8